## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

GUY A.E. WILMOT a/k/a GUY WILMOT,  :

                             :  C. A. No. 15-618-RGA-MPT

        Plaintiff,             :

                             :

MARRIOTT HURGHADA          :

MANAGEMENT, INC. and MARRIOTT    :

INTERNATIONAL, INC.,         :

                             :

        Defendants.         :

### REPORT AND RECOMMENDATION

### INTRODUCTION

Presently before the court is Marriott Hurghada Management, Inc. ("Marriott Resort") and Marriott International, Inc.'s ("Marriott") (collectively, "defendants") motion to dismiss plaintiff's complaint pursuant to the doctrine of *forum non conveniens*.[1] For the reasons that follow, the court recommends that defendants' motion be granted.

### 1.   BACKGROUND

Marriott Resort is a Delaware corporation with its principal place of business in Bethesda, Maryland.[2] Marriott is also a Delaware corporation with its principal place of business in Bethesda, Maryland.[3] Plaintiff Guy Wilmot ("Wilmot") is a citizen of the United Kingdom.[4]

On July 20, 2015, Wilmot filed this action against Marriott Resort and Marriott for injuries allegedly sustained on or about July 19, 2013, while he was a guest at Marriott Resort in Hurghada, Egypt.[5] Wilmot allegedly suffered a fracture of the left proximal

---

[1] D.I. 7.

[2] D.I. 1 at ¶ 4.

[3] *Id.* at ¶ 5.

[4] *Id.* at ¶ 3.

[5] D.I. 1.

humerus and median nerve compression after slipping and falling on a cracked and broken area of the pool deck.[6] He seeks compensatory damages, including, *inter alia*, special damages for past and future medical expenses and lost wages, and costs.[7]

The complaint alleges that jurisdiction is premised on diversity of citizenship under 28 U.S.C. § 1332[8] because Wilmot is a citizen of the United Kingdom, Marriott Resort and Marriott are both Delaware corporations, and the amount in controversy exceeds $75,000.[9] The complaint further alleges that venue is proper in this district under 28 U.S.C. § 1391 because Marriott Resort and Marriott are Delaware corporations.[10]

## 2. LEGAL STANDARD

The Supreme Court explained in *Sinochem International Co. v. Malaysia International Shipping Corporation*[11]:

> [a] federal court has discretion to dismiss a case on the ground *of forum non conveniens* 'when an alternative forum has jurisdiction to hear [the] case, and . . . trial in the chosen forum would establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience, or . . . the chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems.'[12] Dismissal for *forum non conveniens* reflects a court's assessment of a 'range of considerations, most notably the convenience to the parties and the practical difficulties that can attend the adjudication of a dispute in a certain locality.'[13]

We have characterized *forum non conveniens* as, essentially, 'a

---

[6] *Id.* at ¶¶ 13, 18.
[7] *Id.* at 7.
[8] *Id.* at ¶ 1.
[9] *Id.* at ¶¶ 2-5.
[10] *Id.* at ¶ 6.
[11] *549 U.S. 422, 429-30 (2007).*
[12] *American Dredging Co. v. Miller,* 510 U.S. 443, 447-448 (1994) (quoting *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 241 (1981), in turn quoting *Koster v. (American) Lumbermens Mut. Casualty Co.,* 330 U.S. 518, 524 (1947)).
[13] *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 723 (1996) (citations omitted).

> supervening venue provision, permitting displacement of the ordinary rules
> of venue when, in light of certain conditions, the trial court thinks that
> jurisdiction ought to be declined.'[14]

*Forum non conveniens* is "a determination that the merits should be adjudicated
elsewhere."[15]

The Court of Appeals for the Third Circuit established the procedure for
evaluating a *forum non conveniens* motion. First, a district court must determine
whether an adequate alternate forum exists.[16] If so, then the court must determine how
much deference should be given to the plaintiff's choice of forum.[17] Finally, the court
"must balance the relevant public and private interest factors, and if it "indicates that the
trial in the chosen forum would result in oppression or vexation to the defendant out of
all proportion to the plaintiff's convenience, the district court may, in its discretion,
dismiss the case on *forum non conveniens* grounds.[18]

The movant bears the burden of demonstrating an adequate forum exists, which
means that: (1) defendants are amendable to the process;[19] and (2) the subject matter
of the suit must be cognizable in the alternative forum.[20] The second condition relating
to forum adequacy, however, poses more of a challenge.[21]

If the movant satisfies the burden of demonstrating an adequate alternative
forum, then the movant must establish that the litigants' private interests outweigh the

---

[14] *American Dredging,* 510 U.S. at 453.

[15] *Sinochem*, 549 U.S. at 432 (citations omitted).

[16] *Eurofins Pharma U.S. Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 160 (3d Cir.
2010) (quoting *Windt v. Qwest Commc'ns Int'l, Inc.*, 529 F.3d 183, 189-90 (3d Cir. 2008)
(internal citations omitted)).

[17] *Id.*

[18] *Id.*

[19] Defendants are amendable to process in Egypt. D.I. 8 at 4.

[20] *Rudisill v. Sheraton Copenhagen Corp.*, 817 F. Supp. 443, 445 (D. Del. 1993).

[21] *Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 180 (3d Cir. 1991).

public interests in favor of dismissal for *forum non conveniens*.[22] The district court must consider the following private interests: the "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling and the cost of obtaining willing, witnesses; possibility of view of premises . . . ; and all other practical problems that make a trial of a case easy, expeditious and inexpensive."[23] The public interest factors the district court examines are:

> the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.[24]

Defendants contend that Egypt is an adequate alternative forum that has jurisdiction to hear the case, that Wilmot's choice of this forum is entitled to reduced deference because he is a foreign plaintiff, and that balancing the relevant public and private factors heavily weigh in favor of dismissing the action in favor of Egypt. Wilmot responds that Egypt is an inadequate alternative forum; that although his choice of forum is entitled to less deference because he is a foreign plaintiff, it does not mean "little, if any, deference"; and that when the factors are properly weighed, there is no basis for concluding a trial in this forum would establish oppressiveness and vexation to defendants.

3.  **ANALYSIS**

    a.  **Amount of Deference Owed to Wilmot's Choice of Forum**

---

[22] *Id.*

[23] *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947).

[24] *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981) (citations omitted).

As an initial matter, the court must determine the degree of deference that should

be afforded to plaintiff's choice of forum. The Supreme Court instructed in *Piper* that

although "there is ordinarily a strong presumption in favor of the plaintiff's choice of

forum, . . . [that] presumption applies with less force when the plaintiff or real parties in

interest are foreign."[25]

Regarding the deference given to a foreign plaintiff's choice of forum, the Third

Circuit concluded:

> When the plaintiff is foreign . . . this [strong presumption of convenience] is
> much less reasonable. Because the central purpose of any *forum non*
> *conveniens* inquiry is to ensure that the trial is convenient, a foreign
> plaintiff's choice deserves *less deference*.[26]  Foreign plaintiffs, however,
> may bolster the amount of deference due their choice by making a strong
> showing of convenience. Thus, in performing its *forum non conveniens*
> inquiry in a case filed by a foreign plaintiff, the district court must assess,
> and articulate, whether the considerable evidence of convenience has . . .
> overcome any reason to refrain from extending full deference to the
> foreign plaintiff's choice.[27]

In *Lony*, the Third Circuit explained: "the reason for giving a foreign plaintiff's

choice less deference is not xenophobia, but merely a reluctance to assume that the

choice is a convenient one . . . [, but this reluctance] can readily be overcome by a

strong showing of convenience."[28]  Furthermore, the court must evaluate "whether the

considerable evidence of convenience has . . . overcome any reason to refrain from

extending full deference to the foreign plaintiff's choice. It must decide how much less

deference is due this plaintiff's choice of forum, if, indeed, it is due any less than that of

a domestic plaintiff."[29]  Although this is not a precise inquiry, generally:

---

[25] *Piper*, 454 U.S. at 255.

[26] *Id.* (emphasis added).

[27] *Windt*, 529 F.3d at 190 (citing *Lony v. E.I. Du Pont Nemours & Co.*, 886 F.2d 628, 634
(3d Cir. 1989)).

[28] *Lony*, 886 F.2d at 634.

[29] *Id.*

the greater the plaintiff's or the lawsuit's bona fide connection to the United
States and to the forum of choice and the more it appears that
considerations of convenience favor the conduct of the lawsuit in the
United States, the more difficult it will be for the defendant to gain
dismissal for forum non conveniens.[30]

Little deference should be given to plaintiff's choice of forum in this case. As
noted, Wilmot is a citizen of the United Kingdom and although Marriott Resort and
Marriott are Delaware corporations, the alleged injury occurred in Egypt, at an Egyptian
hotel, in the presence of witnesses from Egypt and the United Kingdom.

Plaintiff states that he has fourteen eyewitnesses, five treating physicians, and
ten family members and friends, who he intends to call as witnesses, all of whom are
residents of the United Kingdom.[31] Wilmot also contends that he will call several high-
level Marriott executives, including, but not limited to, Arne Sorenson, David Rodriguez,
Anthony Capuano, and Ronald Harrison, however, none are involved in the operation,
maintenance, or oversight of Marriott Resort.[32] Plaintiff also asserts that most Marriott
employees live in or around the Delaware area, but no Marriott representative from the
Delaware area will have any direct knowledge regarding the incident or the conditions
around the pool at the time the incident occurred.[33] Any relevant information regarding
the maintenance of the pool area is located in Egypt.

### b.   Whether an Adequate Alternative Forum Exists

Marriott Resort and Marriott contend that Egypt offers an adequate alternative
forum for litigation of this case.[34] In support of this contention, Marriott Resort and

---

[30] *Kisano Trade & Invest Ltd. v. Lemster*, 737 F.3d 869, 876 (citing *Iragorri*, 274 F.3d at 72)).
[31] D.I. 18 at Tabs 5-17.
[32] D.I. 23 at 5-6.
[33] D.I. 17 at 15; D.I. 23 at 6.
[34] D.I. 8 at 4-6.

6

Marriott have proferred the affidavit of Tarek Ahmed Roushdy Ezzo ("Ezzo"), an Egyptian attorney with almost thirty-three years of experience.[35]  According to the Ezzo affidavit, Egyptian law recognizes a cause of action for civil liability, more specifically liability in tort.[36]  The affidavit further states that "[c]ivil liability in general is the liability that compensate[s] for the damages caused as a result of the breach of an obligation determined in the pledge/promise of the perpetrator (responsible person)."[37]

Additionally, the Ezzo affidavit provides that Egyptian law recognizes Wilmot's cause of action and that Wilmot, as a citizen of the United Kingdom, would not be barred from bringing such an action in an Egyptian court.[38]  The affidavit also states that the Egyptian law provides a three-year statute of limitations for tort actions.[39]  Furthermore, it is undisputed that Marriott Resort and Marriott are amenable to the process in Egypt.[40]

In determining whether foreign law provides adequate relief, as an element of determining whether the *forum non conveniens* doctrine applies, a court may consider any relevant material or source, including testimony, whether submitted by a party or admissible under the Federal Rules of Evidence, and such determination shall be treated as a ruling on a question of law.[41]  "Adequacy of the foreign forum and the substance of any relevant foreign law is usually established through expert affidavits or

---

[35] *Id.* at Ex. A.
[36] *Id.* at Ex. A ¶ 16.
[37] *Id.*
[38] *Id.* at Ex. A ¶¶ 7-13.
[39] *Id.* at Ex. A ¶ 18.
[40] D.I. 8 at 4.
[41] *Base Metal Trading SA v. Russian Aluminum*, 253 F. Supp. 2d 681, 699 (S.D.N.Y. 2003); Fed. R. Civ. P. 44.1.

7

declarations."[42] The court, however, determines "what weight, if any, to give to [expert]
declarations and to all of the evidence the [c]ourt uses in determining [foreign] law."[43]

Defendants submitted an affidavit from Ezzo, a purported expert on Egyptian
law.[44] Plaintiff asserts defendants failed to lay the proper foundation for this expert.[45]
The Ezzo affidavit however, is provided to the court for aiding in the determination of
Egyptian law under Fed. R. Civ. P. 44.1, not as factual evidence. The "use of an expert
report to assist the court in its determination of foreign law is entirely different from use
of an expert report, pursuant to [Fed. R. Evid. 702], to aid the jury in determining the
facts."[46] Therefore, the court will consider the Ezzo affidavit in making its determination
on the adequacy of Egyptian law.

In defendants' reply brief, they assert for the first time that should this court
determine the relevant sources of proof are not located in Egypt, then, in the alternative,
the appropriate forum would be the United Kingdom.[47] Wilmot, in his sur-reply,
responds defendants' alternative proposal violates D. Del. LR 7.1.3(c)(2), which
provides that, "the party filing the opening brief shall not reserve material for the reply
brief which should have been included in a full and fair opening brief . . . ."[48]

Typically, the court disregards newly-raised arguments; however, arguments in a
reply brief responsive to positions and new information raised in an opposition brief do

---

[42] *Varnelo v. Eastwind Transp., Ltd.*, No. 02-2084, 2003 WL 230741, at *15 (S.D.N.Y.
Feb. 3, 2003).
[43] *Base Metal*, 253 F. Supp. 2d at 700.
[44] D.I. 8 at Ex. A.
[45] D.I. 17 at 4-7.
[46] *Lithuanian Commerce Corp., Ltd. v. Sara Lee Hosiery*, 177 F.R.D. 245, 264 (D.N.J.
1997), *rev'd on other grounds*, 179 F.R.D. 450 (D.N.J. 1998).
[47] D.I. 23 at 7.
[48] D. Del. LR 7.1.3 (c)(2).

not violate D. Del. LR 7.1.3(c)(2).[49]  Wilmot's first mention of any witnesses residing in

the United Kingdom came in his answering brief which states, "the incident occurred

[when] . . . Wilmot was with an organized dive group staying at the [Marriott Resort] . . . .

[and there are] dozens of witnesses regarding liability and damages, none of whom

reside in Egypt."[50]  Until Wilmot's answering brief, defendants understood, that absent

Wilmot, a resident of England, "all material sources of proof in this

case—documentation, physical evidence, and *key witnesses*—[were] located in

Egypt."[51]  Because the United Kingdom was presented as an alternative adequate

forum in response to facts raised in the answering brief, the court shall consider those

arguments.

Plaintiff does not appear to assert that Egypt fails to provide adequate judicial

remedies for the type of action involved in this litigation.  Instead, he asserts that Egypt

is not an adequate alternative forum because of alleged widespread corruption and

regular and consistent terror attacks.[52]  In support, plaintiff primarily focuses on news

stories, reports, and governmental warnings of violence and corruption in the region.

"Courts may, of course, properly consider the safety of litigants when ruling on a

motion to dismiss for forum non conveniens."[53]  The *HSBC* court found that Paraguay

was an inadequate alternative forum because there was a specific risk of violence

---

[49] *Boston Scientific Scimed, Inc. v. Cordis Corp.*, 434 F. Supp.2d 308, 313-14 (finding
that arguments in alleged infringer's reply brief were responsive to arguments raised in
the opposition brief and thus did not violate the local rule governing form and content of
briefs) (citing *In re Fleming Co.*, 316 B.R. 809, 815 n.3 (D. Del. 2004))
[50] D.I. 17 at 2; D.I. 18 at Tabs 4-17.
[51] D.I. 8 at 8 (emphasis added).
[52] D.I. 17 at 7-11.
[53] *BFI Group Divino Corp. v. JSC Russian Aluminum*, 481 F. Supp. 2d 274, 284
(S.D.N.Y. 2007) (citing *HSBC USA, Inc. v. Prosegur Paraguay, S.A.*, No. 03-3336, 2004
WL 2210283 (S.D.N.Y. Sept. 30, 2004)).

9

against the parties to the litigation.[54]  In *HSBC*, there was a history of threats against the plaintiff's investigator.  Several people connected with the case or its investigation were murdered, and there was reason to question the ability of the foreign legal system to adjudicate the case fairly.[55]  In *BFI*, however, the court found Nigeria was an adequate alternative forum and held that *HSBC* was inapposite because the plaintiff in *BFI* did not offer any evidence of violence directed towards the case or parties involved.[56]

Plaintiff's allegations of danger are particularly questionable because the danger and violence posed by the Arab Spring, which began in the spring of 2011, did not deter Wilmot or his dive group from traveling to Egypt in July 2013.  For example, Felix Taylor's affidavit states that in his "personal experience, since the 'Arab Spring,' Egypt has been very unstable and has not been a safe travel destination."[57]  Such concerns did not dissuade him from traveling to Hurghada, Egypt with the dive group.[58]  Moreover, one witness, Simon Kerslake, who has returned to the Marriott Resort several times since plaintiff's fall, makes a distinction between traveling to Egypt for "diving purposes" versus a "court matter."[59]

Wilmot's allegation of corruption is equally unpersuasive.  "The 'alternative forum is too corrupt to be adequate' argument does not enjoy a particularly impressive track record."[60]  Absent at least some particularized showing of wrongdoing, courts are

---

[54] *HSBC*, 2004 WL 2210283, at *3.

[55] *Id.*

[56] *BFI Group Divino Corp. v. JSC Russian Aluminum*, 247 F.R.D. 427, 432 (S.D.N.Y.

[57] D.I. 18 at Tab 5.

[58] *Id.*

[59] *Id.* at Tab 8.

[60] *Eastman Kodak Co. v. Kavlin*, 978 F. Supp. 1078, 1084 (S.D. Fla. 1997) (collecting cases).

hesitant to find foreign courts as corrupt or biased.[61] The Seventh Circuit distinguished that, "generalized, anecdotal complaints of corruption" are not sufficient for a federal court to conclude that a foreign nation's legal system is so corrupt that it cannot be considered as an adequate forum.[62]

Defendants cite *Harp v. Airblue Ltd.* as persuasive authority.[63] In *Harp*, the plaintiff's reliance on Transparency International and other similar sources did not sufficiently demonstrate that Pakistan's judicial system was so corrupt that it would prevent just resolution of the case. The *Harp* court held that the plaintiff failed to make the "powerful showing necessary to support a finding that Pakistan is an inadequate legal forum."[64]

Here, the evidence is insufficient to conclude that Egypt is an inadequate alternative forum. As in *BFI* and *Harp*, plaintiff provided only general complaints of corruption, which include short news stories and news headlines, as well as various human rights reports from non-governmental organizations, such as Transparency International, and United States State Department reports. [65]

## c. Evaluation of Private Factors

The private factors a court must evaluate include:

the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy,

---

[61] *In re Arbitration between Monegasque De Reassurances S.A.M. v. Nak Naftogaz of Ukraine*, 311 F.3d 488, 499 (2d Cir. 2002).

[62] *Stroitelstvo Bulgaria Ltd. V. Bargarian-Am. Ent. Fund*, 589 F.3d 417, 421 (7th Cir. 2009).

[63] 879 F. Supp. 2d 1069 (C.D. Cal. 2012); D.I. 23 at 2.

[64] *Harp*, 879 F. Supp. 2d at 1073 (citing *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1179-80 (9th Cir. 2006)).

[65] D.I. 18 at Tabs 21-22, 25-53.

expeditious and inexpensive.[66]

The private factors in this case weigh in favor of dismissal for *forum non conveniens*. None of the relevant events occurred in Delaware or even in the United States. Virtually all of the evidence necessary for the prosecution of this case is located in either Egypt or the United Kingdom. Marriott Resort managers and employees, any books and records relating to maintenance and any previous incidents, as well as the doctors who performed the initial surgery on Wilmot and any emergency room records are located in Egypt. Further, the site of the accident is there. A view of the site could only be obtained if the action were brought in Egypt, which also weighs in favor of dismissal for *forum non conveniens*.[67] Additionally, Wilmot admits that none of his treating physicians, physical therapists, lay witnesses, and any records generated from his medical care are located in the United States, but are almost entirely located in the United Kingdom.[68]

Wilmot submitted affidavits from thirteen individuals who, he contends, have personal knowledge of the July 2013 incident. [69] All are citizens of the United Kingdom, and claim they would readily testify in Delaware, but either will not or are unwilling to testify in Egypt.[70] For example, Felix Taylor expressed concern about testifying in a matter that might affect a senior military official, and the female witnesses raised issues about their personal safety in Egypt.[71]

Wilmot also claims he intends to call several high-level Marriott executives to

---

[66] *Gulf Oil*, 330 U.S. at 508.
[67] *Rudisill*, 817 F. Supp. at 447.
[68] D.I. 17 at 13.
[69] D.I. 18 at Tabs 5-17.
[70] *Id.*
[71] *Id.* at Tabs 5, 10, 14-17.

12

testify and neither party would be inconvenienced by securing witnesses in the United States because most Marriott employees live in or around the Delaware area.[72] However, none are able to testify to anything relevant about the pool area conditions in Hurghada, nor have any direct knowledge about the incident at the time it occurred.[73]

In any event, the witnesses to the incident are not located in the United States and Delaware is not a more convenient forum than Egypt or the United Kingdom for those witnesses.

### d.    Evaluation of Public Factors

Analysis of the public interests weighs in favor of dismissal. Wilmot contends that although the Marriott Resort is the site of the incident, the hotel is staffed, managed, operated, marketed, and branded by Marriott in the United States. Wilmot argues that Delaware has an important stake in protecting American guests of Marriott in a foreign hotel, especially because Marriott's website advertises that it "enjoy[s] a strong collaborative relationship with [its] owners and franchisees."[74]

This litigation bears no connection to the United States or this court other than defendants are Delaware corporations. Although an element to be considered, it is not dispositive. Given that no witnesses reside in the United States, no evidence is located in the United States, and the scene of the incident is in Egypt, the other factors weigh heavily in favor of dismissal. Based on the lower deference to a foreign plaintiff suing in the United States, the availability of at least one adequate alternative forum, and the evaluation of the private and public factors, Delaware is not a convenient forum. Dismissal on the grounds of *forum non conveniens* is therefore warranted.

---

[72] D.I. 17 at 15.
[73] D.I. 23 at 6.
[74] D.I. 17 at 17.

13

## 4.    ORDER & RECOMMENDED DISPOSITION

For the foregoing reasons, it is recommended that defendants' motion to dismiss

(D.I. 7) be GRANTED.

Pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), Fed. R. Civ. P. 72(b), and D. Del.

LR 72.1, any objections to the Report and Recommendation shall be filed within

fourteen (14) days limited to ten (10) pages after being served with the same.  Any

response is limited to ten (10) pages.

The parties are directed to the Court's Standing Order for Objections Filed under

Fed. R. Civ. P. 72 dated October 9, 2013, a copy of which is available on the Court's

website, located at http://www.ded.uscourts.gov

Dated: May 5, 2016                       /s/        Mary Pat Thynge
                                          UNITED STATES MAGISTRATE JUDGE